IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HOWARD ROBINSON, Individually and** : | | **CIVIL ACTION** |
| as Administrator of the Estate of Tiffany : | | |
| Robinson, deceased, *et al.*, : | | **NO. 24-0055** |
| *Plaintiffs* : | | |
| : | | |
| **v.** : | | |
| : | | |
| **PHILADELPHIA HOUSING** : | | |
| **AUTHORITY,** *et al.* : | | |
| *Defendants* : | | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 March 11, 2026

# MEMORANDUM OPINION

**INTRODUCTION**

      This action arises out of the tragic deaths of twelve individuals, including several children, following a horrific fire at a residential apartment building owned and managed by the Philadelphia Housing Authority (the "PHA"). (ECF 50 at p. 4). This Court will not recount in detail the alleged facts, as those have been laid out in an earlier memorandum opinion. (*See* ECF 64). In short, the fire is believed to have started after a young boy with developmental disabilities lit a Christmas tree on fire, which ignited the building. (ECF 50 at p. 4). Plaintiff Howard Robinson, ("Plaintiff") by this action has attempted to hold several third-party entities and individuals liable for this incident, alleging that both the PHA and the City of Philadelphia ("Defendant" or the "City") are liable for failing to provide working smoke detectors and overcrowding of units in the building in which the incident occurred. (*Id.* at ¶¶ 38-263). Claims against PHA (and employees thereof) have been dismissed. (ECF 64, 65). Plaintiff's remaining claim against the City, a *Monell*-styled claim at Count III, is the subject of the present motion. This Court declined to dismiss this count

upon the City's second motion to dismiss based on a technical deficiency. (*See* ECF 66).[1] The City has since answered the amended complaint, (ECF 67), and moved for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c) as to the remaining claim, (ECF 68). Plaintiff has responded in opposition, (ECF 69), and the City, without leave to do so,[2] nonetheless filed a reply, (ECF 70). In consideration of these filings, the amended complaint, and the law, the City's motion is granted.

**LEGAL STANDARD**

Rule 12(c) provides that "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such motions are reviewed under the same standards as motions to dismiss under Rule 12(b)(6). *Caprio v. Healthcare Revenue Recovery Grp.*, 709 F.3d 142, 146–47 (3d Cir. 2013). When evaluating a Rule 12(c) motion, the court must accept as true all facts alleged in the pleadings and draw all inferences in favor of the nonmoving party, here Plaintiff. *Leithbridge Co. v. Greenwich Ins. Co.*, 464 F. Supp. 3d 734, 738 (E.D. Pa. 2020) (citing *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019). The court should not grant a motion for judgment on the pleadings under Rule 12(c) "unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 349 (3d Cir. 2018) (citation omitted).

---

[1] This Court has yet to reach the merits of this issue as the City has, before now, failed to properly present it. (*See* ECF 64).

[2] The Local Rules of the Eastern District of Pennsylvania do not allow a reply as a matter of form. *See* L. Civ. R. 7.1(c) (allowing for a response but not a reply). Though Defendant failed to file a motion and acquire Court approval for leave to file a reply, Defendant's reply is nonetheless considered.

**DISCUSSION**

The remaining claim in Plaintiff's operative complaint is a *Monell* claim against the City premised on the City's alleged failure to promulgate adequate policies and procedures for ensuring the safety, particularly from a fire hazard, of individuals in PHA-run buildings and failure to train its employees with respect to the same. (ECF 50 ¶¶ 252-256). The amended complaint does not satisfy the pleading standards for holding a municipality liable under *Monell v. New York City Dpt. Of Soc. Servs.*, 436 U.S. 658 (1978). Critically, Plaintiff's amended complaint, (ECF 50), fails to allege *facts*–rather than legal conclusions–to support its claim the City either had a policy or custom or failed to train with regard to overcrowding or provision of operational smoke detectors in PHA-managed housing units that led to the alleged injuries.

### *The Monell Standard*

At Count III of the amended complaint, Plaintiff asserts a *Monell* claim against the City premised on, *inter alia*, the City's alleged failure to promulgate adequate policies and procedures for ensuring the safety of individuals in homes under the auspices of DHS and the City's failure to provide sufficient guidance or train its employees with respect to the same. (ECF 50 at ¶¶ 252-256). The City argues there can be no municipal liability unless there is an alleged constitutional violation supported, facilitated, or otherwise allowed by a municipality such that *Monell* liability can attach. (ECF 68 at pp. 5-9). While the City's position may be overstated, it is ultimately correct.

Under *Monell*, "a municipality cannot be held liable solely for the acts of others, *e.g.*, solely because it employs a tortfeasor." *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010) (citation and internal quotation marks omitted). In other words, cities and municipalities cannot be held "liable vicariously . . . solely on the basis of the existence of an employer-employee

3

relationship with a tortfeasor." *Id.* (citing *Monell*, 436 U.S, at 692).  Thus, a municipality may only "be held liable 'when execution of a government's policy or custom . . . inflicts the injury.'" *Id.* at 36 (citing *Monell*, 436 U.S. at 694).  And "a municipality may be 'independently liable for a substantive due process violation' even if no municipal employee is liable,'" *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 n.13 (3d Cir. 2020) (citations omitted).  Here, Plaintiff has failed to aver a policy or custom – passed, carried out, endorsed and/or enforced – by the City that caused the alleged injuries.  Finding the pleading deficient in this respect is sufficient to dismiss Count III on the pleadings.[3]

To state a viable *Monell* claim, a plaintiff must plead facts sufficient to plausibly show (1) a constitutional violation by a municipal actor (2) that was caused by a municipal policy or custom. *Monell*, 436 U.S. at 694.  Where the risk to constitutional rights is not obvious from the nature of the activity, "deliberate indifference on the part of the city policymakers to the need for" remedy may be inferred from "a pattern of constitutional violations." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989).  To prevail, a plaintiff must show "both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998).

### *Plaintiff's Monell Claim Against The City*

It is challenging to discern the policy or pattern of activity upon which Plaintiff's Count III claim against the City rests.  It appears that Plaintiff is claiming that the City was indifferent to a

---

[3] Plaintiff has already once amended, (ECF 50), and, thus, no further amendment to cure this deficiency is warranted.

known present danger, in particular conditions that "include life threatening living arrangements, such as fire hazards." (ECF 50 at ¶ 254). This, through the actions of a single individual, Defendant Fulton, allegedly constitutes a "polic[y] and custom[]" that led to a violation of Plaintiff's Fourteenth Amendment rights. (*Id.* at ¶ 255). Plaintiff tries in vain to articulate a cognizable Fourteenth Amendment right that the City violated. (*Id.* ¶ 255(a) – (g)). These include, a "failure to define fire hazard," (*id.* at ¶ 255(b)), a vaguely phrased "failure to promulgate a policy, custom, or procedure that describes how employees, representatives, and/or agents are to perform home safety checks," (*id.* at ¶ 255(a)), and a failure to "train employees representatives, and/or agents on how to perform home safety checks to ensure that children are safe," (*id.* at ¶ 255(c)). Even more remote, Plaintiff alleges the Fourteenth Amendment was violated because the City "fail[ed] to promulgate a policy, custom, or procedure that describes how employees, representatives, and/or agents are to communicate and work with other local government agencies." (*Id.* at ¶ 255(d)). While this Court appreciates the parties agree that a fire occurred – a fire started by a child – and that deaths resulted therefrom, the law simply does not allow the present *Monell* claim to proceed on the vague allegations in the Second Amended Complaint, (ECF 50), that somehow an instance of overcrowding or failure to provide operational smoke detectors somehow amounted to a policy or custom enacted by or tacitly observed by the City. Not all tragedies provide a remedy–some courts have called it an act of God. As unsatisfying as that may be, this is a court of law, and the current state of the law cannot be contorted to allow this claim (Count III) to move forward against the City.

There are no credible allegations that the City had a policy or custom – passed, endorsed, enforced, and/or carried out – that led to the underlying facts and consequences alleged in the complaint, certainly none that amount to violations of the deceased's constitutional rights. The

5

City is correct that there is no source of law supporting a conclusion that any of the alleged "failures" comprise a constitutional violation, such that a *Monell* claim may survive. *See Johnson v. City of Philadelphia*, 975 F.3d 394, 401 (3d Cir. 2020) ("Here, there are no allegations of affirmative conduct by the Dispatcher that caused the Johnson Family's harms. Rather, Appellant claims only that the Dispatcher failed to communicate the Johnson Family's location to the firefighters. But this is a classic allegation of omission, a failure to do something—in short, a claim of inaction and not action. That is not enough under our prior decisions, and so we will affirm the dismissal of that [*Monell*] claim."). This case is not so different from *Johnson* – ultimately, Plaintiff does not allege that Defendant's actions created the conditions for the incendiary incident, the complaint alleges that once that incident was started by a young child's mistake, Defendant's prior failures led to a lethal result. Indeed, Plaintiff argues in response that Ms. Fulton (a PHA employee) "visited" the homes of individuals affected by the fire to "check on the minors' safety at [their] home[s]." (ECF 50 at p. 7). There, Ms. Fulton allegedly acknowledged inoperable smoke detectors posed a risk. (*Id.*) But Ms. Fulton's alleged acknowledgment does not a policy or custom make –rather, this allegation shows a government employee acknowledging and noting for rectification a deficiency in fire detection in the homes in which she visited. This does not amount to nor properly allege a City-sanctioned policy or custom. The allegations are simply not sufficient to allow Plaintiff's *Monell* claim against the City to move forward.

**CONCLUSION**

For the reasons set forth, the City Defendants' motion for judgment on the pleadings, (ECF 68) is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.